We will hear argument next in No. 22-1381, Barlow v. United States. Whenever you are ready, Mr. Smith. May I please have a word? In Illinois, the use of the phrase right-of-way in the Needs Granting Clause to a railroad for its right-of-way is, without fail, always interpreted as a grant of an easement. This is the rule, no matter if the deed sets forth that a grant should be raised a right-of-way. I'm sorry, just to stop you. Was that true in the Chicago coding case? In Illinois. Was that decided under Illinois law? It was decided under Illinois law. My point was an Illinois court has never interpreted the grant of a right-of-way. But, to more fully answer that question, in Chicago coding, I believe that that decision hinged upon the grant conveyed being of real estate, said real estate being the right-of-way, and they interpreted that grant as not a direct grant of a right-of-way. Plus the waiver of homestead exemption, which played a... Plus the waiver of homestead exemption. Exactly. That seemed to be the tipping point in the Chicago coding decision. We don't have any homestead... We don't have any homestead exemption here, none whatsoever. And I won't go into exactly why it's important, but it is a common feature of fee civil conveyances to railroads. Now, there is no permutation of the grant of a right-of-way that has ever been interpreted as anything other than a grant of an easement in Illinois. And again, it doesn't matter if that grant conveyance is a right-of-way, it's for the right-of-way, or the right-of-way. It is always a grant of an easement in Illinois. Would it be fair to say, you say in the granting clause, is it more precise to say it's always an easement subject to some rare exception, like Chicago coding, when right-of-way is the direct object of the verb that does the conveying, like convey or grant? Right, so the direct object of convey and warrant, or grant to convey, is the right-of-way. Okay. Yes, right-of-way is easement, and it is consistently applied that way. Right-of-way, when using the granting clause as a direct object, is not interpreted as a grant of land in Illinois. It is intended as a grant of a right of passage. That's it. And that is such a total and complete rule that, in fact, this court could actually disregard the various other easement factors that are present in the right-of-way agreements and still arrive at that correct conclusion. In Illinois- So just so I can make sure I understand your argument, I think you're saying that just looking at the granting clause alone gets us to the conclusion that you're saying with respect to easement on right-of-way. You don't have to look at the title or any other law. No, that's exactly right. But if the court wants to go there, too, I mean, there's obvious grants of easement, and then there are slam-dunk grants of easement. And when you have the granting clause saying what it says, plus you have the title, plus you have, in the second paragraph, in the abandonment clause of D, a reference back to said right-of-way in fee simple, and then you have the homestead exemption. I mean, these factors are just piling on at this point. And the cases you're relying on are cases like Diaz and McVeigh and Tolman. And all the other 12 to 20 cases in our brief. You have, I think, a more difficult argument with the next category of documents, the purpose agreements? I don't think so. Okay. Tell me why those- One final thing about the right-of-way agreement. This second clause, and I promise and agree to make all proper and necessary deeds to convey in fee simple to said company said right-of-way. Remind me what you make of that so that it doesn't undo your main- So in fee simple, said right-of-way. Okay. Because there's Illinois law that says you can hold an easement in fee simple? That is exactly right. Okay. And that is an indication of the- Okay. I'm sorry. I should say how it's long-lasting and exclusive to that railroad. Like another railroad can't go in there and put another right-of-way on, a railway on that strip of land. But I was going to say that the reason why the right-of-way agreements are kind of slammed down really helps out the- or actually makes the railroad purpose agreements turn the same way. And that is because where those purpose statements are located within the deed. That is also in the granting clause. Granting and convey for railroad purposes. I agree with you that the cases that seem to be relied on by the government and discussed by the Court of Federal Claims. Penn, Central, Keene, Sowers. They all had the purpose mentioned in the consideration clause, right? Either in the consideration clause or later in the deed. I believe it was referenced to be in the abendum clause too. And your view is because this says, I convey for railroad purposes the following, that that results in a different outcome. Yes. Are there any cases that support that? Are there any cases that- I haven't been able to find any cases other than maybe Magnolia where the- That is the case I was going to identify. Okay. So in Magnolia, the deed is granting convey the following described real estate to win a strip of land to be used for railroad purposes. So, excuse me, to be used for road purpose. But the key aspect of Magnolia is that it's all contained within the granting clause of that deed. The purpose language, what's being identified as being conveyed is this purpose, the railroad purpose. That's what gives it this special meaning. And Magnolia held that that was an easement. Is that right? Yes, that was an easement. Now, full disclosure, that wasn't a railroad right-of-way easement case. But nonetheless, that language, that purpose language, that the court had to give that meaning because of where it is. Because if we're going to give any way to- Well, we must give some way to purpose language at some point time for interpreting deeds in Illinois. If we're not going to say it has any meaning whatsoever, or it's not going to have the meaning in the granting clause, then really, truth be told, it's not going to have any meaning anywhere for any purpose. So, again, it's because of where these terms are located in these transactions, in these deeds, that that gives the meaning. And Your Honor referenced other cases too. I guess I'm not remembering whether it's in any of the deeds in this case, or the transfer documents in this case, or in some of the precedents. I thought that there were some conveyance documents that talk about purpose, nevertheless grant a fee simple. Right. And say the reason we're doing it is this. But then they go on to say, and by the way, if you stop using it as a railroad, we're going to undo this. So it is fee simple, but it's undoable if the stated purpose is no longer satisfied. I think you've got a much closer call there, I think. So let's explore that a little bit, an example. Because I'm asking about that because it seems to me that that would be an example where there would be meaning given to saying what the purpose was, even in a fee simple grant. If later provisions say, once you stop using it as a railroad, you lose all your interest in this, and it goes back to the grantor. Some sort of a fee simple, determinable, or some other transaction like that. But I think when we're talking strictly about easement versus fee, in a somewhat similar example, let's say they grant convey a strip of land. That strip of land is in this area, to having to hold said strip of land for rarer purposes and then revert later on if it's not used for rarer purposes anymore. I think in that situation, you've got a closer call there, Your Honor, in terms of whether that's going to be a fee simple or easement conveyance in Illinois. I think it probably still comes out of easement. But we don't have that. We've got for rarer purposes as part of it. So your point about, for what purpose would that clause, for rarer purposes, be in there? Here, the answer, I think you're saying, is no purpose unless it is altering the nature of the interest conveyed. Yes, I think that's close. I think that once you start having, I mean, I think you kind of get into the other concept, too, that that introduces is what is to be given more weight? What's being said in the granting clause or what's being said in the Venom clause? And the Venom is never going to be allowed to override or contradict what's in the granting clause. So I think that concept plays into it as well and controls more or less. When would you say the granting clause ends? I just want to make sure that I'm on the same page as to kind of exactly the scope of the granting clause on the speaker. How would you describe that? So I would say the words grant and convey is the verb form. What is being granted conveyed? And the direct object is whatever follows that. In this case, the direct object for the right-of-way agreements is the right-of-way. In railroad purpose agreements, it's for railroad purposes. So whatever terms or concepts follow directly from grant and convey. Sorry to interrupt you, but isn't it also a grant and convey for railroad purposes such and such land? It's all of that. It doesn't stop at for railroad purposes, right? Grant and convey for railroad purposes, a strip of land over and across. Or I'm looking at the other example right now. I'm not sure. I'm not sure. Is it a grammar matter? Maybe you would say for railroad purposes is the direct object of the verb grant and convey? I think that's the way to read it because you have to, not just because of that feature too, but also, again, where it's being placed in the deed. It's being stressed because it's in this portion of the deed. Okay? It's not taken as sort of a recital for why they're making the transaction, a recital clause, or just a reference back to something else. It's being stressed by the parties that this land is going to be used for railroad purposes. And I understand what Your Honor is saying, but in the Magnolia case too, grants convey the following disguised real estate to it, a strip of land. I mean, that even has more details prior to the purpose statement than our deeds do here. Do you know of any cases in Illinois in which something was interpreted as a fee simple deed, but then the deed wasn't used for the purposes specified in the agreement, and therefore that fee simple reverted back to the original ownership? I can't think of a case like that. The cases, looking back at the facts of a lot of these fee versus deed cases, a lot of them are a situation where the railroad's abandoned its use of the land, and then they've got an argument against the adjacent landowner. Well, we still own the fee simple even though we left the land. That land is still ours. But the adjacent landowner is saying, no, no, no, the railroad just had an easement, and that's why I get my land back. So the issues seem to revolve more around what happens when a railroad is abandoned and not necessarily what happens when they start using the land for some other purpose than the railroad. The only case where I saw this focusing on that was that Walker case involving Stephen Douglas' land. That one? Do you know which one I'm talking about? I'm not super familiar with that one. The purpose language was interpreted to not be binding. Right. Okay. But I think what still gets us there, gets the court there nonetheless, is Magnolia and just the simple reality that it's just a railroad easement. The landowners certainly own the adjacent land, and pursuant to the Illinois State line presumption, they get the land when the railroad right-of-way land is abandoned. Do you also look at cases like Keene and Sowers and Penn Central to kind of support your point in terms of the placement of where that for railroad purposes is put or similar language? Absolutely, Your Honor. And, you know, the CFC relied on those cases to rule against plaintiffs, but those plaintiffs fully support plaintiff's position, which is that the location of the term in the granting clause carries the day. That's what's critical. That's what's critical. So those cases, even though they were interpreted against us, actually do help plaintiffs' case. Now, with respect to the third batch, we have the areas of the right-of-way where there is no conveyance instrument. In 2015, the court was faced with the same evidence essentially that it had in 2020. In 2015, the evidence before the court was that there was no fee-simple conveyance located. There was no easement conveyance located. On that basis, the court ruled in two ways, one which was wrong and one which was particularly incorrect. One was that the court ruled that plaintiffs did not carry their burden for summary judgment and, therefore, they're not entitled to have summary judgment granted in their favor. But the second error was that the court also said, just because the plaintiffs had not carried the burden, they also, and that there was a genuineness of material fact, the plaintiffs also lose their case. And that wasn't right. That's not how summary judgment works. I see my time is up, Your Honor. Okay. Thank you.  Please surround the tree. May it please the court. I'd like to begin with the parcels for which there are conveying instruments. Can I? I'm sorry to interrupt you before you start. There was something in your red brief that concerned me, and I just haven't seen you fix it, and so I just want to bring it to your attention. Yes. Which is on page 31 of your brief. You say this court has referred to McVeigh as a relative outlier. No, and it was Magnolia. Helen's pointed that in the reply brief. That is a mistake. It was Magnolia that this court referred to as an outlier. Yes, I apologize for that. Where I'd like to begin is the premise of Appellant's argument is that the rules of construction for railroad deeds are governed by a bright line absolute rule under which the mere presence of the phrase right-of-way dictates the type of estate that's been conveyed. And based on that premise, they make two overarching arguments, which is that right-of-way is capable of only one meaning, and that it can convey only an easement. And their second argument is that if the term right-of-way appears in the deed, particularly in the granting clause, then it must be construed as conveying only an easement. But this court in Chicago coding and the Illinois state courts in Urbatus and Sowers have made unequivocally clear that under Illinois law, there is, and I'm going to quote this, no per se rule that the mere inclusion of the term right-of-way in any deed to a railroad negates the possibility that title in fee simple was conveyed. I guess I take their argument, or at least the argument I'm interested in on the other side, to be that this is for the right-of-way group of cases, that when the phrase right-of-way is the direct object of the granting verbs convey, then every single case in Illinois lines up and says that's the grant of an easement unless somehow negated later. And that seems to me to be true, as I read the cases, is subject only to what this court said about the Jones deed in Chicago coding, where, as I read our opinion, it really depends on this reference to the waiver of the Homestead exemption. Well, Your Honor, we have a reading that there's no per se rule about the phrase right-of-way. No, but what you read was the phrase right-of-way being used anywhere in the deed. That's a much broader category than used as the direct object of a granting verb. I understand, Your Honor, you're placing significance on the location. And I understand that there are cases in which the word right-of-way has been found in what one could categorize as the granting clause. But there is no law that says the location is determinative, that if it is the direct object or if it is in the granting clause, then it must be a right-of-way. And the reason relying on the term right-of-way by itself and giving it ultimate weight is that the Sowers Court, the Illinois court, has stated, has held, that it is settled that the term right-of-way has twofold significance. So when we see the term right-of-way, though one might in their minds think, oh, that's an easement, we now know that under Illinois law, and Chicago coding understands that as well, that's why there's no per se rule about the use of the term right-of-way. Even if there isn't a per se rule, how do we not look at cases like Diaz, McVeigh, and Tolman, which have language very similar to the language at issue here, and therefore conclude that what's been typed as the right-of-way agreements are in fact conveying an easement? Well, first we have to remember that Urbatus, which is a Supreme Court decision out of Illinois, supersedes all of those. It's a 1991 decision. All of the other cases that you've spoken to are much earlier cases or appellate court cases out of the Illinois state courts. So what we have is the binding precedent as of 1991 out of Illinois that's saying there is no per se rule about seeing the phrase right-of-way. What this court has to do is when it sees the phrase right-of-way, look for accompanying language. What tells me that this, of the two acceptable meanings for the phrase right-of-way, what tells me that this meaning is for the use only of the land versus for the land itself? So what we need to look for right now, what we have in the right-of-way agreements here, is unadorned reference to right-of-way. This court has to determine what did the parties intend? Because though we have no right rule about what right-of-way means, what this court does know is we have three principles of rules of construction under Illinois state law. The first is we be- Why don't we put all of it together, at least for the right-of-way agreements? We've got a title. We've got a granting clause language. We've got something else. Why doesn't all of that together lead to the conclusion that opposing counsel- Because you can't know for certain what the words right-of-way mean. You can't say, well, I see the word, the phrase right-of-way, so it must mean easement. We know that under Illinois state law that's not the case. It's settled that it has two meanings. The court has to decide what is the meaning in these agreements. And again, I say you can't simply- We know we can't begin and end with just the phrase, so you look for other language within the agreement. And again, that brings me back to what the rules of construction are in the Illinois state courts. We begin, as the court must, that the fee has been conveyed. These are in statute, all of these agreements, purpose and right-of-way are in statutory form. So we begin with the fee has- Do you agree, though, that in Urbatus, the right-of-way language was not in the grant clause? I believe it was in the conditions clause. And, Your Honor, I'm not remembering, but assuming that is the case, that still does not stand as a standard. Even if it's not a standard, then Urbatus doesn't necessarily mean that these other cases were wrong. Or that they aren't law for us to look to to resolve the issue in front of us. I'm simply indicating that, based on the case law, what the court has to do is to make sure, when it sees the phrase right-of-way, that it understands what it means and it doesn't come to that phrase with the presumption- I don't think they do that. I apologize. I certainly did not mean that. But to get back to the rules that we do know are in place, because there are no absolute rules about location, there are no absolute rules about the meaning of the phrase right-of-way, what we do have is rules of construction for these deeds. The first of which is, as I said, we begin with presumption that the fee was conveyed. The second is to look to the intention of the parties. And we do that, the courts hold, by looking at the conveying instrument in its entirety. That is not only accepted by this court in Chicago coding. It's accepted by the Illinois courts, for example, in Urbatus and Keene and Sowers. It's in the Illinois Conveyances Act that you look to the entirety plaintiffs, I mean, appellants themselves, in their briefs at- the opening brief at 16 and page 16. Sorry, so what are the portions that might support your view, notwithstanding a title and the phrase right-of-way being the direct object of the grant? For the right-of-way, we go to the second paragraph, where the grantors have clarified that to the extent I'm not clear in the first paragraph, I'm clear in the second paragraph that what I will convey, or what I will do is take care of all of the ministerial tasks to get- to convey to you in fee simple what I have addressed in paragraph one. If we look at paragraph two, it can't stand alone. Isn't there a case law in Illinois that says that you can convey a- oh, maybe I'm getting confused. Convey an easement in fee simple. There is. Certainly, there's a thing- an easement can be held in fee, but that has to- first, we have to have that there's an easement. So first, we have to establish here that by clear language, express clear language, the only thing that's been conveyed is use of the land and not the land itself. Well, I guess I took there to be two points on the other side about what to make of this second paragraph. One is that Illinois law makes clear that you can convey an easement in fee simple. Second, by its language, this is about an act that is to be taken in the future, which is not the act already been done by the first paragraph. And I don't think there has been any proof or even offering of such future acts to make all proper and necessary deeds to convey in fee simple. So that this just doesn't end up altering the message we would take away from the title and the first paragraph. The second paragraph speaks to what the grantor will do when the railroad tracks go down. There is no dispute the railroad tracks went down, so we have to assume that then what was followed through is what the grantor did was the ministerial tasks of simply getting the deeds. And the reason the grantor was getting deeds to convey in fee simple, it's all of the language thereafter refers back to paragraph one. It's to convey in fee simple to said company in paragraph one, said right-of-way in paragraph one, as soon as said railway in paragraph one is located on or across said described premises in paragraph one. Paragraph two cannot exist without paragraph one. What it says is, I will do the ministerial tasks to complete the conveyance that has been given in paragraph one. Can you talk about the non-instrument parcels as well? I'm sorry, the non-instrument? Parcels, yes. Appellant's theory is that they were, let me get the exact language. Their theory is that there were no grants for those lands. So I thought that the theory was there could well have been conveyances. We don't have the documents showing what the conveyances were. In the absence of those documents, the abutting landowner's fee simple interest has not been shown to have been transferred away from the abutting landowners. Full stop. Your Honor, no, I apologize. And I should have been looking at it. And then there's reference to the Illinois Constitution of all places in the Bill of Rights that a non-voluntary transfer to a railroad transfers nothing more than an easement. So that if you don't have a conveyance, there is no other way that the fee simple interest could have been conveyed. Okay, to begin with, for the parcels for which there's no conveying instrument, if you look at appendix page 673, it's appellant's position that the land was never granted to the railroad. It's their position that those lands were acquired by the railroad only by adverse possession. Well, it depends whether you're emphasizing in that phrase the word land, which I think is their emphasis, or the other parts of it. I take it their position to be fee simple interest in the land was never granted. And we know that, or rather, we don't know the contrary. We do not have any granting document that overrides the pre-existing fee simple interest of the abutting landowner. The position of the appellants is that those lands were acquired by adverse possession. I don't actually remember that that is their position, but in any event, it's not necessary. I took it that their references to adverse possession were that without a conveying document, there is no other way the railroad could have gotten fee simple title, because the other ways in which transfers occur, the involuntary ways, like adverse possession or condemnation, by law do not give fee simple title. It's not been stated that that's the law in Illinois, that that's the only thing that the railroads can get. I don't know of any authority that they've cited to. Isn't that in the Illinois Constitution, in section 113 or something? If you don't mind, I don't know what the theory is, though. If their theory, and the reason the CFC ruled against them was because their theory is adverse possession. And in their briefs, that's what they argue. Suppose that I do not read their theory to be that, but I read it to be that we know, I'm sorry, that the abutting, we to the plaintiffs, the abutting landowners started with fee simple title. There is no voluntary conveyance that took that away from us. None has been in evidence. Now, the only question is, well, could the railroad have gotten it without a voluntary conveyance? Answer, if you look at Illinois law, no, they couldn't have. If I may, my time is up. The only thing I have to offer is for these, the three parcels that don't have conveying instruments, as the CFC found and appellants haven't disputed this, they haven't shown who owns the parcels of land, not the abutting land. They haven't shown who owns the parcels. They haven't shown how they work. What do you say the parcels? The parcels of land on which the corridor is located. Right. Not the abutting. Which is adjoining the landowner's land on which they have a fee simple title, right? But I don't know that there's anything in the record that shows that it's adjoining, it abuts, and the parcels are owned. I believe it's right in the court's order. Well, as the CFC found then, they haven't established who owns the land on which the corridor is located. Right. Well, can I just ask you, you have a sentence on page 48 of your brief, but plaintiffs fail to establish as a threshold matter that they themselves own the land adjoining the parcels. No citation. I can't find anything in the CFC order that says that at all. If they weren't abutting landowners, you know, game over. And you just, I think, I read the sentence to say they're not abutting landowners, and I don't know where that comes from. If that's how it reads, that's a mistake. You didn't mean that? If you read the CFC's order, they haven't shown who owns the parcels of land on which the corridor is located. But they do say right at page 843 that the plaintiffs have put forward documents showing that they own the land abutting the disputed parcels. The disputed parcels. They haven't shown ownership of the disputed parcels. I understand, but I think if the presumption is that they own that land or had it in fee simple until some sort of agreement was made where they conveyed it either by easement or fee simple, and there's no agreement to show what happened, right? So in other words, there's no agreement showing that they conveyed anything, right? So isn't that then bad for the railroad? Well, it doesn't establish that they have a legally cognizable interest, which is the ultimate test here. Simply this meaning that there's a vacuum and there's nothing doesn't get them a takings claim if they haven't established their interest. And I'm sorry, I am perhaps misunderstanding. The disputed parcels in my mind are the corridor and abutting parcels are adjacent to it. And so I'm speaking of that there is no proof of ownership of the disputed parcels themselves. Okay, thank you. Mr. Smith, three minutes. I won't take up much time. I was just going to just come back for a second to the Tallman case and just reiterate that that case is still a good Illinois law. Illinois Supreme Court case from the 1940s, and that's interpreting the interplay between the Illinois Conveyances Act and this concept of deed interpretation, recognizing that every term and every deed is to be given away. Here's what I just want to read to the court what the Tallman case says here. It says the principle to be derived from the prior decisions of this court on this question, that question being how do we deal with right-of-way and the Illinois Conveyances Act, the principle to be derived from the prior decisions of this court on this question is that words indicating that a right-of-way or easement is granted will limit the effect of words of general warranty. That is the Illinois Supreme Court case saying that the phrase right-of-way will limit the estate to an easement. I just want to make that clear. I have a housekeeping question. Sorry. If we agree with you on, let's say, the right-of-way agreements, for example, do you feel strongly about reversal versus vacature? I beg your pardon? Do you feel strongly about the outcome being reverse or vacate? If we agree with you. Well, the decision would be reverse because there is no genuine issue of the material fact that plaintiffs do own the adjacent land, and we were just talking about who has the fee simple ownership of the railroad right-of-way adjacent to the parcels. The right-of-way agreements prove that the railroad only held easement for railroad purposes, therefore there's absolutely nothing that can overcome the Illinois Supreme Court assumption. It's not a fee simple conveyance, and that's the only thing that could put the ownership of the fee simple into the possession of the railroad. If there's a document that says the railroad owns the fee simple, that's the only thing that wins the day for the government. So if you... On remand, what, if anything, is there for the court to do in light of the decision that we would... Let's say we agree with you, we remand, what would the court need to do next or the next steps? What the court would need to do next is, well, the court would need to hold an evaluation trial or the parties would have to settle the matter of just compensation because that would be a preso taking at that point. Thank you very much. Thanks to you all, counsel. The case is submitted.